IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DONALD RAY ARMER                                                       PLAINTIFF

                 v.                      Civil No. 11-2052

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                     DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

I.     **Factual and Procedural Background**

Plaintiff, Donald Ray Armer, brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("the Act").

Plaintiff protectively filed his SSI application on September 8, 2008, alleging an onset date of January 1, 2004, due to back and knee pain, anxiety/panic, depression, headaches, and left eye blindness. Tr. 11, 136, 142, 190, 193. On the application date, Plaintiff was forty nine years old and possessed a high school education with some college and cosmetology training. Tr. 16-17, 29, 139-140, 204, 254. He has no past relevant work. Tr. 17.

Plaintiff's application was denied at the initial and reconsideration levels. Tr. 61-64, 71-73. At Plaintiff's request, an administrative hearing was held on September 11, 2009. Tr. 22-58. Plaintiff was present at this hearing and represented by counsel. The Administrative Law Judge ("ALJ") rendered an unfavorable decision on November 25, 2009, finding Plaintiff was not disabled within the meaning of the Act. Tr. 6-18. Subsequently, the Appeals Council denied Plaintiff's Request for Review on January 28, 2011, thus making the ALJ's decision the final decision of the

Commissioner. Tr. 1-4. Plaintiff now seeks judicial review of that decision.

**II.     Medical History**

    A.  Mena Internal Medicine

On March 17, 2004, Plaintiff presented to David Henderson, M.D., at Mena Internal Medicine, with complaints of severe back pain. Tr. 197-200. Plaintiff described pain between his shoulder blades and in his lumbar region. Tr. 197. He denied numbness/tingling in his extremities. Tr. 197. He stated he could not afford x-rays or MRI imaging secondary to being unemployed. Tr. 197.

Plaintiff's physical examination was unremarkable, with the exception of a slight decrease in deep tendon reflexes in Plaintiff's left lower extremity. Tr. 198. Dr. Henderson diagnosed Plaintiff with disc degeneration of the cervical and lumbar spine. Tr. 198. He prescribed pain medication and muscle relaxers, and instructed Plaintiff to use ice and heat therapy and perform range of motion exercises. Tr. 198.

In December 2004, Plaintiff reported continued upper and lower back pain. Tr. 200. Dr. Henderson refilled Plaintiff's pain medication. Tr. 200. In March 2005, Plaintiff reported sinus congestion and drainage, but no additional complaints. Tr. 199. Plaintiff sought no further treatment for his back pain.

    B.  Tom Wallace, M.D.

On July 31, 2008, Plaintiff saw Tom Wallace, M.D., for a consultative eye examination. Tr. 268-271. Dr. Wallace found a history of esotropia, a partially dislocated lens in Plaintiff's left eye, and cataracts and macular scars in both eyes. Tr. 269. Plaintiff's uncorrected vision was 20/70 in his right eye, which could slightly improve to 20/60, and "count fingers" in the left eye. Tr. 269. Dr. Wallace recommended prescription glasses. Tr. 269. He did not believe cataract surgery would

be beneficial. Tr. 268.

    C. <u>Sheree L. Moskow, Psy.D.</u>

On December 11, 2008, Plaintiff saw Sheree L. Moskow, Psy.D., for a consultative psychological evaluation. Tr. 202-209. Plaintiff reported a history of depression and severe anxiety. Tr. 202. He stated he had "been high most of his life." Tr. 202. He reported prior sexual abuse as a child. Tr. 202. He attempted to join the Navy, but was not accepted due to poor vision. Tr. 202. After completing high school and cosmetology training, Plaintiff opened his own salon for three months. Tr. 204. He later worked odd jobs to earn extra money. Tr. 204. He was married once for five years. Tr. 204. He denied a history of mental health treatment and was not taking any psychiatric medications. Tr. 202. Plaintiff's only counseling took place in prison. Tr. 203. He reported a history of drug abuse and alcoholism. Tr. 204.

On examination, Plaintiff was visibly anxious and depressed. Tr. 205. Thought processes were normal. Tr. 205. Plaintiff reported previous suicidal ideation and attempts, but denied any recent plan or attempt. Tr. 205. He admitted hearing voices calling his name, but denied any serious psychotic symptoms. Tr. 205. He had some difficulty with working memory. Tr. 206. Dr. Moskow diagnosed Plaintiff with post-traumatic stress disorder ("PTSD"), major depressive disorder, recurrent, severe, without psychotic features, attention-deficit/hyperactivity disorder ("ADHD"), not otherwise specified, and polysubstance dependence, in sustained full remission. Tr. 207. She also noted some dependent features in Axis II. Tr. 207. Dr. Moskow estimated Plaintiff's Global Assessment of Functioning ("GAF") score at 41-50. Tr. 207. She found Plaintiff would have difficulty coping with the mental/cognitive demands of basic work-like tasks due to anxiety, intrusive and avoidant symptoms of PTSD, including difficulty with authority figures, and limitations in working memory and attention. Tr. 208. Dr. Moskow found Plaintiff also had trouble

with persistence, as he quit tasks prior to completion. Tr. 208.

    D.  <u>Brian T. Oge</u>

On December 16, 2008, Plaintiff saw Brian T. Oge, M.D., for a consultative physical examination. Tr. 213-217. At the time of evaluation, Plaintiff was not taking any prescription medication. Tr. 213. He reported left eye blindness, back pain, knee pain, chest pain, heart palpitations, and lightheadedness. Tr. 213-214. Upon examination, Plaintiff had mild neovascularization in his left eye and few exudates in both eyes. Tr. 214. Plaintiff's uncorrected vision was 20/70 in his right eye and 0 in his left eye. Tr. 214. He had decreased confrontational fields in his right eye. Tr. 214. Plaintiff's heart had regular rate and rhythm, with no murmurs. Tr. 215.

Range of motion in Plaintiff's lumbar spine was within normal limits, but extension and rotation were reduced in his cervical spine. Tr. 215. Dr. Oge also noted upper trapezius spasms. Tr. 216. Straight-leg raising was normal. Tr. 216. Plaintiff had normal passive range of motion in all his extremities and joints, including his shoulders and knees, with no signs of synovitis. Tr. 215. Reflexes were intact and Plaintiff exhibited no signs of muscle weakness or atrophy. Tr. 216. Gait and coordination were normal. Tr. 216. Plaintiff was able to walk on his heels and toes, but he was unable to squat/rise from a squatting position. Tr. 216. Limb function was otherwise normal. Tr. 216.

X-rays of Plaintiff's lumbar spine, dated December 29, 2008, were unremarkable. Tr. 211. The vertebral body heights and disc spaces were well-maintained and there were no definite fractures, dislocations, or acute processes appreciated. Tr. 211. Dr. Oge diagnosed Plaintiff with left eye blindness with pupil dilation, non-reactive to light, and back pain with thoracic muscle spasms. Tr. 217. He found Plaintiff was severely limited concerning his vision and moderately limited in his

x

ability to work overhead, lift/carry, and stoop. Tr. 217.

  E. <u>Agency Specialists</u>

  On February 5, 2009, Jerry Thomas, M.D., completed a Physical Residual Functional Capacity ("RFC") Assessment, in which he found Plaintiff could occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, stand/walk/sit for about six hours in an eight-hour workday, and push/pull an unlimited amount, other than as shown for lift/carry. Tr. 218-225. He found no postural, manipulative, communicative, or environmental limitations, but determined Plaintiff was limited in his near acuity, far acuity, and depth perception, and could not work in areas where excellent vision was required. Tr. 220-222.

  On March 2, 2009, Winston Brown, an agency consultant, completed a Psychiatric Review Technique Form ("PRTF"), in which he considered Listings 12.02 (organic mental disorders), 12.04 (affective disorders), 12.06 (anxiety-related disorders), and 12.09 (substance abuse disorders), but determined Plaintiff's impairments did not meet or equal a listed impairment. Tr. 234-247. Brown found mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation, each of extended duration. Tr. 244.

  In a Mental RFC Assessment, Brown found moderate limitations in Plaintiff's ability to carry out detailed instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision and without being distracted by others, complete a normal workday and work week without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others. Tr. 248-

251. He determined Plaintiff was not significantly limited in all remaining work-related categories. Tr. 248-251. Based on his findings, Brown determined Plaintiff could perform unskilled work. Tr. 250-251.

    F.  <u>Western Arkansas Counseling and Guidance Center</u>

On July 6, 2009, Plaintiff presented to Western Arkansas Counseling and Guidance Center ("WACGC") for crisis intervention and stabilization. Tr. 252-253. Plaintiff reported suicidal ideation and intent. Tr. 252. He reported two prior suicide attempts. Tr. 252. Michael Hopper, Ph.D., assessed Plaintiff with major depressive disorder, recurrent, severe without psychotic features. Tr. 252-253. Plaintiff was referred to Mena Regional Hospital for inpatient hospitalization. Tr. 252.

After Plaintiff was stabilized, he was discharged to WACGC for outpatient therapy. Tr. 253-267. Upon intake, he denied any further suicidal ideation, but admitted feeling depressed and anxious. Tr. 253. He reported a history of multiple drug abuse, but stated he was largely in remission. Tr. 253. However, he admitted drinking twice a week and using stimulants and marijuana twice within the last year. Tr. 254-256. He later admitted using marijuana one to two times per month, with a larger quantity of use each time. Tr. 256. When asked about his inpatient treatment, Plaintiff responded that he was "medicated and feeling better." Tr. 256. He was taking Cymbalta, Hydroxyzine, and ibuprofen. Tr. 256. He reported that "medication and getting things off my chest while in confidence" allowed him to make the most improvement during past treatment. Tr. 256.

During examination, Plaintiff appeared restless and depressed. Tr. 256. However, his thought processes and content were logical/coherent and his memory was intact. Tr. 256. Attention and concentration were normal, and Plaintiff had good insight and judgment. Tr. 256. Dr. Hopper estimated Plaintiff's intelligence to be within the average range. Tr. 256. In addition to major depressive disorder, Dr. Hopper diagnosed Plaintiff with generalized anxiety disorder and

polysubstance dependence. Tr. 253, 257-258, 263. He estimated Plaintiff's GAF score at 22. Tr. 258.

At a follow-up appointment, Plaintiff stated he could no longer afford Cymbalta and Hydroxyzine was not effective. Tr. 259. As a result, Terrell Bishop, M.D., Plaintiff's psychiatrist, prescribed Paxil and Thorazine. Tr. 260. In August 2009, Plaintiff stated these medications had significantly decreased his anxiety and depression. Tr. 261. There are no further treatment records from WACGC.

### III.    Applicable Law

The court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that he is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The

Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits his physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity (RFC) to perform his past relevant work; and (5) if the claimant cannot perform his past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given his age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is declared not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

**IV.**   **Discussion**

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point since September 8, 2008, the application date. Tr. 11. At step two, the ALJ found Plaintiff had the following severe impairments: left eye blindness, PTSD, major depressive disorder, substance abuse disorder, and degenerative disc disease. Tr. 11. At step three, he determined Plaintiff's impairments did not meet or medically equal a listed impairment. Tr. 11-12. At step four, the ALJ found Plaintiff could perform less than the full range of light work. Tr. 12-17. Specifically, he found Plaintiff could lift/carry twenty pounds occasionally and ten pounds frequently, stand/walk/sit for six hours in an eight-hour workday, and push/pull an unlimited amount using hand and foot controls. Tr. 12-17. He found no postural or manipulative limitations, but determined Plaintiff had limited near and far visual acuity, limited depth perception, and would be unable to perform work where excellent vision was required. Tr. 12-17. Mentally, the ALJ found Plaintiff

was limited to unskilled work where interpersonal contact is incidental to the work performed, complexity of tasks is learned and performed by rote, with few variables and little judgment, and the supervision required is simple, direct, and concrete.  Tr. 12-17.

Once the ALJ determined Plaintiff had no past relevant work, he continued to step five.  Tr. 17.  After soliciting vocational expert testimony, he determined there were jobs existing in significant numbers in the national economy that Plaintiff could perform.[1]  Tr. 17-18.  Therefore, the ALJ found Plaintiff was not under a disability, as defined in the Act, at any point from September 8, 2008, the application date, through November 25, 2009, the date of the decision.  Tr. 18.

On appeal, Plaintiff contends the ALJ erred by: (1) determining his combined impairments did not meet or equal the requirements of Listing 12.04; (2) improperly determining his RFC; and (3) improperly dismissing his subjective complaints.[2]  *See* Pl.'s Br. 14-18.

A.  <u>Listings</u>

Plaintiff contends the ALJ erred in finding he did not have an impairment or combination of impairments that met or medically equaled Listing 12.04 (affective disorder).  *See* Pl.'s Br. 16-17.  Plaintiff's argument is without merit.

Listing 12.04 has the following requirements:

> 12.04 Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome.  Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
>
> 1.  The required level of severity for these disorders is met when the requirements in *both* A and B are satisfied, or when the requirements in C are satisfied.
>     A.  Medically documented persistence, either continuous or intermittent, of one of

---

[1] After eliciting testimony from a vocational expert, the ALJ determined Plaintiff could perform representative occupations such as janitorial worker, of which there are 900,000 jobs nationally and 8000 jobs locally, and café attendant, of which there are 400,000 jobs nationally and 1900 jobs locally.  Tr. 17-18.

[2] Plaintiff's arguments have been reordered and condensed so they may be addressed concisely.

> the following:
> 1. Depressive syndrome characterized by at least four of the following:
>> a. Anhedonia or pervasive loss of interest in almost all activities; or
>> b. Appetite disturbance with change in weight; or
>> c. Sleep disturbance; or
>> d. Psychomotor agitation or retardation; or
>> e. Decreased energy; or
>> f. Feelings of guilt or worthlessness; or
>> g. Difficulty concentrating or thinking; or
>> h. Thoughts of suicide; or
>> i. Hallucinations, delusions or paranoid thinking; or
>
> 2. (omitted); or
>
> 3. (omitted); *AND*
>
> B. Resulting in at least two of the following:
>> 1. Marked restriction of activities of daily living; or
>> 2. Marked difficulties in maintaining social functioning; or
>> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04 (emphasis added). Plaintiff asserts he meets the criteria for Listing 12.04. However, while he discussed the "A" criteria, he made no mention of the "B" criteria. In order to satisfy Listing 12.04, the requirements of both A and B must be met. *Id.*

In a detailed analysis, the ALJ determined Plaintiff's impairments did not meet the "B" requirements, as he had only mild restriction in activities of daily living, mild difficulties in social functioning, moderate difficulties in concentration, persistence, or pace, and no episodes of decompensation, each of extended duration. Tr. 11-12. Moreover, Plaintiff's depression did not satisfy the "C" criteria, as he had no episodes of decompensation and never required a supportive living arrangement. Tr. 12. This determination is consistent with Plaintiff's treatment record as well

as his subsequent improvement with medication and therapy. *Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir. 1993) (an impairment is not disabling if it can be controlled by medication or treatment).

Additionally, Plaintiff's argument that the ALJ failed to consider the combined effects of his impairments in the medical equivalency determination is conclusory, as Plaintiff provided no meaningful analysis of the relevant law or facts. *See Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005) ("We reject out of hand Vandenboom's conclusory assertion that the ALJ failed to consider whether he met listings 12.02 or 12.05C because Vandenboom provides no analysis of the relevant law or facts regarding these listings.")). For these reasons, the court finds no error.

B. RFC

Plaintiff contends the ALJ made an improper RFC assessment concerning his visual and mental impairments. *See* Pl.'s Br. 14-16. At the fourth step of the evaluation, a disability claimant has the burden of establishing his RFC. *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). A claimant's RFC is the most he can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Masterson*, 363 F.3d at 737. The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination. *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

The ALJ properly addressed Plaintiff's visual limitations. Although Plaintiff is essentially blind in his left eye and has cataracts in both eyes, Dr. Wallace did not recommend cataract surgery. Tr. 268. Instead, he recommended prescription glasses to improve vision in Plaintiff's right eye and

to protect both eyes. Tr. 269. Despite Plaintiff's contention that 20/60 vision in his right eye is severe, the American Optometric Association lists 20/60 vision within the "mild vision loss" or "near-normal vision" category. AM. OPTOMETRIC ASS'N, *Caring For Your Vison: Low Vision,* http://www.aoa.org/x5240.xml (last visited November 1, 2011). As such, the ALJ took Dr. Wallace's findings into account when he noted that Plaintiff had limited near and far visual acuity and depth perception, and restricted him from performing work where excellent vision was required. Tr. 13-15. For these reasons, the court finds no error.

The ALJ also properly considered Plaintiff's mental impairments. Although Plaintiff alleges severe depression and anxiety, he did not seek formal treatment for over five years after his alleged onset date. *See Kirby v. Astrue*, 500 F.3d 705, 708-09 (8th Cir. 2007) (claimant never sought formal treatment by a psychiatrist, psychologist, or other mental health care professional over a long-term basis). In fact, Plaintiff did not mention depression or anxiety until his December 2008 consultative evaluation. Moreover, once he did receive formal treatment at WACGC, Plaintiff stated that Paxil and Thorazine significantly improved his depression and anxiety symptoms. Tr. 261; *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (an impairment that can be controlled by treatment or medication is not considered disabling).

Finally, substantial evidence supports the ALJ's consideration of Plaintiff's back and joint pain. X-rays of Plaintiff's lumbar spine were normal. Tr. 211. Plaintiff had full range of motion in his extremities, joints, and lumbar spine. Tr. 215-216. Dr. Oge noted trapezius muscle spasms and reduced extension and rotation in Plaintiff's cervical spine. Tr. 215. However, Plaintiff was treated conservatively with muscle relaxers, pain medication, and range of motion exercises. Tr. 198. Dr. Henderson, Plaintiff's treating physician, never recommended further testing, physical therapy, or an orthopedic consultation. *See Gowell v. Apfel*, 242 F.3d 793, 76 (8th Cir. 2001)

(physician treated claimant conservatively); *McNamara v. Astrue*, 590 F.3d 607, 611 (8th Cir. 2010) (no medical reports indicate that physician ever placed physical limitations on claimant's ability to perform work-related functions). Additionally, Plaintiff did not seek treatment for back pain after 2004 and took only over-the-counter medications. *See Davis v. Barnhart*, 197 Fed. Appx. 521, 522-523 (8th Cir. 2006) (lack of treatment and prescription pain medication). After considering all the relevant evidence, the undersigned concludes that substantial evidence supports the ALJ's RFC determination. *Roberts v. Apfel,* 222 F.3d 466, 469 (8th Cir. 2000) (ALJ bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence).

    C. Subjective Complaints

Plaintiff contends the ALJ improperly dismissed his subjective allegations of pain. *See* Pl.'s Br. 17-18. The court disagrees.

When evaluating a claimant's subjective allegations, the ALJ must consider all evidence relating to: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness and side effects of medication; and (5) any functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ "may not discount a claimant's allegations of disabling pain solely because the objective medical evidence does not fully support them." *Medhaug v.* Astrue, 578 F.3d 805, 816 (8th Cir. 2009) (quoting *Goff*, 421 F.3d at 792). However, subjective complaints may be discounted if there are inconsistencies in the medical evidence as a whole. *Id.* A court "will not disturb the decision of an ALJ who considers, but for good cause expressly discredits, a claimant's complaints of disabling pain." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (quoting *Goff*, 421 F.3d at 792).

The ALJ cited the following reasons for questioning Plaintiff's credibility: (1) Plaintiff did not allege any mental limitations until his consultative evaluation; (2) Plaintiff was somewhat noncompliant with treatment, as he continued drinking alcohol and using drugs; (3) no physician placed any physical restrictions on Plaintiff; (4) Plaintiff was treated conservatively for his back pain; (5) Plaintiff's depression improved with medication; and (6) Plaintiff made inconsistent statements regarding his drug use. Tr. 15-16. Additionally, the record reflects that Plaintiff engaged in such activities as washing clothes, doing dishes, light cooking, walking, and shopping. Tr. 16, 36-37, 40-42, 145-147, 166-168, 171; *Halverson v. Astrue*, 600 F.3d 922, 928 (8th Cir. 2010) (claimant's allegations of employment-related difficulties were inconsistent with her ability to travel, visit friends, go shopping, and care for her activities of daily living); *Haynes v. Shalala*, 26 F.3d 812, 815 (8th Cir. 1994) (activities included walking, caring for livestock, doing laundry, cooking, and shopping). Moreover, as previously discussed, Plaintiff's depression and anxiety improved with treatment and medication. *Medhaug v. Astrue*, 578 F.3d 805, 816 (8th Cir. 2009) (an impairment is not considered disabling if it is adequately controlled with medication). Finally, the objective evidence of record simply does not support the alleged severity of Plaintiff's impairments. *Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999).

Here, the ALJ cited the proper standard, considered the factors in conjunction with Plaintiff's testimony, and then properly discounted his subjective complaints. *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) ("we defer to an ALJ's credibility determinations if they are supported by valid reasons and substantial evidence"). For these reasons, substantial evidence supports the ALJ's decision to discredit Plaintiff's subjective complaints.

## V. Conclusion

Accordingly, having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's decision, and recommends that the decision be affirmed, and Plaintiff's case be dismissed with prejudice. **The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

ENTERED this 2nd day of November 2011.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE